UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

DR. BERNARD T. LEONELLI,     )
     )
     Plaintiff,     )
     )
     v.     )     CIVIL NO.  1:07cv121
     )
CITY OF KENDALLVILLE, <u>et al.</u>,     )
     )
     Defendants.     )

<u>OPINION AND ORDER</u>

This matter is before the court on a motion for summary judgment filed by the defendants on February 4, 2008.  The plaintiff, Dr. Bernard T. Leonelli ("Leonelli"), responded to the motion on April 21, 2008, to which the defendants replied on May 9, 2008.  Leonelli filed a sur-reply on May 14, 2008.

Also before the court is a motion to strike filed by Leonelli on April 7, 2008.  The defendants responded to the motion on April 22, 2008, to which Leonelli replied on April 28, 2008.

Additionally, on May 8, 2008, the defendants filed a motion to strike.  Leonelli filed a response on May 13, 2008, to which the defendants replied on May 22, 2008.

<u>Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  <u>Fitzpatrick v. Catholic Bishop of Chicago</u>, 916 F.2d 1254, 1256 (7th Cir.

1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline

<u>Corp.</u>, 702 F.2d 102, 105 (7th Cir.), <u>cert. denied</u>, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. <u>See</u>, <u>Waldridge v. American Hoechst Corp. et al.</u>, 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. <u>Anderson</u>, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. <u>Anderson</u>, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. <u>Id</u>. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586; <u>First National Bank of Cicero v. Lewco Securities Corp.</u>, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with

specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

Discussion

The defendants[1] recite the following facts in support of their motion for summary judgment.[2]

On May 3, 2006, the Defendant Officers were dispatched to a house on Granada Drive in Kendallville ("Granada Residence"). (Affidavit of Officer Douglas Davis, para. 4; Affidavit of Sergeant Michael McCann, para. 4; Affidavit of Officer Larry Richardson, para. 4; Affidavit of Detective Lance Waters, para. 4; and Affidavit of Officer Johnny Richie, para. 4).[3] The Defendant Officers were advised by the dispatcher that there was a domestic disturbance occurring at the Granada Residence. (Id., para. 5).They were also advised that someone had

---

[1]The defendants are Patrolman Douglas M. Davis, Patrolman Mike McCann, Detective Lance Waters, Sergeant Larry Richardson, Patrolman Johnny Richie, and the City of Kendallville.

[2] As the defendants are claiming immunity the facts and circumstances as perceived by the Defendant Officers are paramount in this case. Furthermore, the existence of probable cause is determined by what the Defendant Officers knew and believed at the scene. Leonelli's version of the facts are included as relevant.

[3] Leonelli has filed a motion to strike portions of the affidavits of defendants Davis, McCann, Richardson and Waters. For the reasons discussed later in this order, the motion to strike will be denied.

started a fire on the front lawn of the Granada Residence.(Id.).

As Officer Davis approached the Granada Residence, he observed a large fire on the front lawn. (Davis Aff., para. 6). He also observed several individuals, whom he believed to be the plaintiff's neighbors, in the street near the Granada Residence. (Id.).

As he exited his patrol car, Officer Davis was advised by one of the individuals in the street that there was another domestic, or fight, occurring at the Granada Residence. (Id., para. 7). Then, as he approached the house, he observed the plaintiff standing on the front porch. (Id., para. 8). Officer Davis was wearing his full police uniform and identified himself as a police officer to the plaintiff. (Id., para. 9). He then instructed the plaintiff to come and talk to him. (Id.). The plaintiff responded by shaking his head, turning around and walking into the house. (Id.).[4]

In response, Officer Davis opened the front door and again instructed the plaintiff to come with him. (Id., para. 10). However, the plaintiff continued to walk away from Officer Davis, toward the interior of the house. (Id.). As he did, Officer Davis noticed his right hand reaching in front of his body. (Id.). Not knowing what he was reaching for, for his own safety and the safety of anyone who might have been in the house, Officer Davis entered the house, and escorted the plaintiff from the house. (Id.).

Based upon his observations, the information reported to him and the plaintiff's conduct, Officer Davis believed that there was probable cause to arrest the plaintiff for Resisting Law Enforcement. (Id., para.11). Officer Davis was also concerned that additional crimes had been

---

[4] Leonelli contends that either Officer Davis did not talk to him, or if he did, Leonelli did not hear him.

committed related to the reports of domestic violence and the fire on the lawn of the Granada Residence. (Id.).

As Sergeant McCann, the next officer to arrive at the Granada Residence, approached the Granada Residence, he also observed, and his in-car camera recorded video of, a large fire on the front lawn. (McCann Aff., paras. 6 and 12 and video attached as Exhibit "A1"). Sergeant McCann watched as Officer Davis escorted the plaintiff from the porch of the Granada Residence. (Id., para. 6). He walked up to Officer Davis and the plaintiff, and stood nearby while Officer Davis handcuffed the plaintiff. (Id., para. 7). At no time did Sergeant McCann touch the plaintiff. (Id.).

Prior to any of the Defendant Officers entering the Granada Residence to search for a victim, Sergeant McCann, Detective Waters and Officer Richardson were informed by one of the plaintiff's neighbors that she heard a woman screaming in the house prior to the officers' arrival.[5] (McCann Aff., para. 9; Waters Aff., para. 7; and Richardson Aff., para. 7). In addition, prior to any of the Defendant Officers entering the Granada Residence to search for a victim, each of the officers observed damage to the front door of the Granada Residence which was consistent with the door having been forced open before they arrived.[6] (Davis Aff., para. 13; McCann Aff., para. 10; Waters Aff., para. 8; Richardson Aff., para. 8; Richie Aff., para. 7).

After other police officers arrived at the scene, Officer Davis, Detective Waters, Officer Richardson and Officer Richie entered the Granada Residence for the limited purpose of

---

[5] Leonelli claims that since no one else was in the house, there could not have been anyone screaming. Nevertheless, Leonelli cannot dispute the fact that the neighbor informed the Officers that she heard a scream.

[6] Leonelli has admitted that the door frame had a small crack.

searching for victims and/or other individuals that had been involved in an altercation with the plaintiff. (Davis Aff., para. 12; Waters Aff., para. 9; Richardson Aff., para. 9; Richie Aff., para. 8). At no time did Sergeant McCann enter or conduct a search inside the Granada Residence. (McCann Aff., para. 11). Leonelli claims that the officers performed a detailed search, including looking into cabinets, drawers and his home computer.

After looking inside the Granada Residence for other individuals, Officer Davis spoke with the plaintiff. (Davis Aff., para. 17). The plaintiff indicated that he and his wife had been involved in a verbal altercation earlier in the evening, and that she had left on foot. (Id.). Officer Davis then radioed the plaintiff's identifying information to dispatch for a warrants check. (Id., para. 18). He was later informed by dispatch that there was a no contact, protective order against the plaintiff by Jayme Leonelli, whom Officer Davis believed to be the plaintiff's wife. (Id.). Actually, Jayme Leonelli is the plaintiff's ex-wife and Mary Leonelli is the plaintiff's current wife. Officer Davis also believed Jayme Leonelli to be the person that had left the Granada Residence after an argument with the plaintiff. (Id.). Base upon this additional information, Officer Davis also prepared a probable cause affidavit for the plaintiff's arrest for Invasion of Privacy. (Id.).

According to the defendants, none of the Defendant Officers searched the plaintiff's computer, nor did any of the Defendant Officers search through any drawers in the Granada Residence. (Davis Aff., paras. 14-16; McCann Aff., para. 11; Waters Aff., paras. 10-12; Richardson Aff., paras. 10-12; Richie Aff., paras. 9-11). The defendants contend that the Officers only searched those areas of the Granada Residence where they believed that they might find a human body or a person hiding. (Id.)

Officer Davis is the only defendant that the plaintiff believes subjected him to false arrest and malicious prosecution. (Deposition of Bernard T. Leonelli, p. 97, lines 15-25 and p. 98, lines 1-14, attached hereto as Exhibit "F"). The plaintiff did not see any of the defendants enter his home, other than Officer Davis at the time of his arrest. (Id., p. 35, lines 15-25; p. 36, lines 1-14; p. 51, lines 22-25; and p. 52, lines 1-11). The plaintiff did not see any of the defendants search his home. (Id.).

The plaintiff has alleged in his Complaint that he was unreasonably seized/falsely arrested and maliciously prosecuted by Officers Davis and McCann. The plaintiff also claims that the search of his home was unlawful, and that the Officers committed unlawful trespass.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). Probable cause exists when "an officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." Thompson v. Wagner, 319 F.3d 931, 934 (7th Cir. 2003). "An officer's belief in the existence of probable cause need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." Anderer v. Jones, 385 F.3d 1043, 1049 (7th Cir. 2004). "All police need is probable cause, which is well short of certainty." Hernandez v. Sheahan, 455 F.3d 772, 775 (7th Cir. 2006). Courts evaluate probable cause based on the facts as they would have appeared to a reasonable person in the position of the arresting officer– seeing what he saw, hearing what he heard. U.S. v. Parra, 402 F.3d 752 (7th Cir. 2005).

In determining whether probable cause exists, the actual motives of the arresting officers

are irrelevant; the question is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them. Scott v. United States, 98 S. Ct. 1717, 1723 (1978). A plaintiff's Section 1983 action must be dismissed without a trial if there is any reasonable basis to conclude that probable cause existed. Thompson v. Wagner, 319 F.3d 931, 935 (7th Cir. 2003).

The defendants claim that the facts and circumstances within Officer Davis' knowledge at the time of the plaintiff's arrest led Officer Davis to the reasonable belief that the plaintiff had committed the offense of Resisting Law Enforcement ("RLE"). Indiana Code 35-44-3-3 prohibits anyone from resisting or interfering with a law enforcement officer. The statute provides, in relevant part, as follows:

(a)     A person who knowingly or intentionally:

(1)     forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;

(2)     forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

(3)     flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor except as provided in subsection (b).

The Indiana Court of Appeals has held in two cases, Tawdul v. State, 720 N.E.2d 1211 (Ind. Ct. App. 1999) and Wellman v. State, 703 N.E.2d 1061 (Ind. Ct. App. 1998), that the failure to comply with a law enforcement officer's lawful request is sufficient to constitute "fleeing" under

the RLE statute.

In <u>Tawdul</u>, a police officer pulled over a vehicle in which Tawdul was a passenger. 720 N.E.2d at 1212. Tawdul and the driver exited the vehicle and then refused to return to the vehicle despite the officer's repeated requests to remain inside the vehicle. <u>Id</u>. Tawdul was arrested and convicted of RLE. <u>Id</u>. On appeal, Tawdul argued, among other things, that he had no obligation to return to the car and that his detention was unlawful. <u>Id</u>. at 1214. The Court of Appeals held:

> We therefore conclude that Tawdul had the obligation to comply with the officer's request to return to the car for purposes of ensuring officer safety and allowing the officer to make an assessment of the situation. Because Tawdul failed to comply with this request, his arrest for resisting law enforcement is valid.

<u>Id</u>. at 1217.

In <u>Wellman</u>, a Division of Family and Children's Services worker and a police officer were at Wellman's house to investigate a report of child abuse. 703 N.E.2d at 1062. There was a discussion outside the residence between Wellman, the caseworker and the officer in which Wellman was uncooperative. <u>Id</u>. At one point, Wellman stated that he was going back inside his home. <u>Id</u>. He was told by the officer not to do so. <u>Id</u>. Nevertheless, Wellman went back inside and locked the door. <u>Id</u>. The officer demanded that Wellman open the door. Id. Wellman refused. <u>Id.</u> The officer then forced the door open, entered the home and arrested Wellman for RLE. <u>Id</u>. Wellman was charged with, and convicted of, two counts of RLE. <u>Id</u>. One of the counts was for entering the house despite the officer's order to remain outside. <u>Id</u>.

On appeal, Wellman argued that the act of walking into his house did not constitute "fleeing" under the RLE statute. <u>Id</u>. at 1062-63. The Court of Appeals disagreed, and held: "for purposes of a conviction of resisting law enforcement, it was enough that Wellman disobeyed a

command to remain by walking away from Officer Hatfield into his own house and thereafter locking the door behind him." Id. at 1063.

In the present case, Officer Davis was confronted with a situation in which he was dispatched to the Granada Residence to investigate a report of a domestic disturbance and a fire on the front lawn. As he approached the Granada Residence, he observed a large fire on the front lawn. As he exited his patrol car, Officer Davis was advised by a neighbor that there was "another" fight occurring at the Granada Residence. Officer Davis then observed the plaintiff standing on the front porch.

While in his full police uniform, Officer Davis identified himself as a police officer to the plaintiff, and instructed the plaintiff to come and talk to him at least two times. The plaintiff refused both times, and walked away from Officer Davis both times. In light of the facts and circumstances, the defendants argue that a reasonable officer would have believed that the plaintiff had committed the offense of RLE.

In response to the defendants' evidence, Leonelli makes two arguments. First, he claims that Officer Davis "said nothing to Dr. Leonelli until both were inside the home." Second, he argues that a person's refusal to comply with an officer's instructions to "come here and talk to me" cannot serve as the basis for a charge of RLE. Leonelli asserts that a police officer must use the words "stop" or "freeze" before a person is obligated to comply with the officer's instructions.

As the defendants note, however, Leonelli's first assertion, that Officer Davis said nothing to him until after he entered Leonelli's home, contradicts Leonelli's deposition testimony. Leonelli testified, in relevant part, as follows:

Q. Is it possible that you were so focused, that you didn't notice the officer pulling up?

A. Its possible. I didn't know anybody – I didn't look around. I keep – I mind my own business.

Q. Is it possible that you didn't notice the officer walking up your lawn as you're going into the house?

A. I didn't see anybody?

Q. But is it possible that you were just so focused that you didn't notice?

A. I didn't notice him.

Q. And is it possible that the officer said something to you and you just didn't hear him or you didn't notice. . .

A. I didn't notice.

Q. . . . before you went into the house?

A Yes.

Q. So it's possible?

A. Yes.

(Leonelli Dep. at 118).

Clearly, Leonelli has acknowledged that it was possible that Officer Davis did speak to him while they were both outside of his house. Since probable cause is determined by "the facts and circumstances within the officer's knowledge", whether Leonelli actually heard Officer Davis' instructions is irrelevant. Thompson v. Wagner. 319 F.3d 931, 934 (7th cir. 2003).

As the defendants point out, the evidence before the court shows that Officer Davis instructed Leonelli to come to him and talk to him on at least two occasions, and, for whatever reason, Leonelli failed to comply by shaking his head and walking away.

Leonelli also attempts to distinguish the two cases cited by the defendants, <u>Tawdul v. State</u>, and <u>Wellman v. State</u>. Leonelli claims that <u>Tawdul</u> is factually different from the case at bar because it involved the stop of a vehicle. However, this fact does not materially distinguish <u>Tawdul</u> because <u>Tawdul</u> was cited by the defendants to show that the specific words "stop" or "freeze" are not necessary. In <u>Tawdul</u>, the criminal defendant, Tawdul, was "asked [by the officer] to remain in the car." 720 N.E.2d at 1212. There is no indication that the officer ever ordered Tawdul to "stop" or "freeze", yet Tawdul's conviction for RLE was upheld. The Court of Appeals concluded that "Tawdul had the obligation to comply with the officer's request to <u>return to the car</u>." <u>Id</u>. at 1217 (emphasis added). This court agrees that Leonelli has failed to demonstrate that <u>Tawdul</u> is distinguishable in any significant way.

The defendants also cited to <u>Wellman</u> to show that specific words are not required before it can be concluded that a criminal defendant has resisted law enforcement. In <u>Wellman</u>, the arresting officer told Wellman not to go inside of his house. 703 N.E.2d at 1062. There is no indication that the officer expressly ordered Wellman to "stop" or "freeze", yet, once again, the conviction for RLE was upheld. Thus, this court agrees that <u>Wellman</u> is not materially distinguishable.

Leonelli also argues that Officer Davis "issued no express or even implied command to 'stop' or remain outside the home." As the defendants point out, it is uncontradicted that Officer Davis, in the light of the raging fire on Leonelli's front lawn, instructed Leonelli to "come to him and talk to him". Clearly, these words alone would convey to any reasonable person, especially under the circumstances, the message that turning and walking away was not an appropriate response. This court finds that under the facts and circumstances within the knowledge of

Officer Davis, he had probable cause to arrest Leonelli.[7]

As the Seventh Circuit has determined that as long as probable cause for arrest exists for at least one charge, evidence of probable cause for other possible charges is unnecessary. <u>Biddle v. Martin</u>, 992 F.2d 673, 677 (7th Cir. 1993).

The defendants next assert, in the alternative, that they are entitled to qualified immunity on Leonelli's unreasonable seizure/false arrest and malicious prosecution claims. "A public official's conduct is protected by qualified immunity when "the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". <u>Cleveland-Perdue v. Brutsche</u>, 881 F.2d 427, 430 (7th Cir. 1989); <u>Meyer v. Robinson</u>, 992 F.2d 734, 738 (7th Cir. 1993). "The objective standard is designed to protect the public interest in deterrence of and compensation for an official's unlawful conduct while safeguarding the official's ability to make difficult decisions with independence and without fear of consequences." <u>Id</u>.

A two-step analysis is used to determine whether a defendant is entitled to the protections of the qualified immunity doctrine: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) "[W]hether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001). The inquiry as to the second step "must be undertaken in light of the specific context of the case, not as a broad

---

[7] There is no evidence that Officer McCann participated in Leonelli's arrest. Rather, he merely stood nearby while Leonelli was arrested. Therefore, Officer McCann is entitled to summary judgment on Leonelli's unreasonable search, false arrest and malicious prosecution claims.

general proposition." Id. at 201.

The qualified immunity inquiry acknowledges "that reasonable mistakes can be made as to the legal constraints on particular police conduct". Id. at 205. It is the plaintiff's burden to show "the existence of a clearly established constitutional right." Kernats v. O'Sullivan, 35 F.3d 1171, 1176 (7th Cir. 1994). "Viewed as a whole, the doctrine of qualified immunity erects a substantial barrier for plaintiffs, and appropriately so because qualified immunity is 'designed to shield from civil immunity all but the plainly incompetent or those who knowingly violate the law.'" Id. at 1177 (quoting Donovan v. City of Milwaukee, 17 F.3d 944, 952 (7th Cir. 1994)). The applicability of the qualified immunity doctrine is a question of law. Hammon v. Kunard, 148 F.3d 692, 695 (7th Cir. 1998). "Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007).

The defendants argue that under both prongs of the qualified immunity analysis, Officer Davis (and the other defendants) are entitled to qualified immunity. First, Officer Davis had probable cause to arrest Leonelli and did not violate Leonelli's constitutional rights. However, even assuming a constitutional violation occurred, the defendants argue that it would not have been clear to a reasonable officer that Officer Davis' conduct was unlawful in the situation that he confronted.

With respect to the RLE charge, clearly the plaintiff refused to comply with Officer Davis' requests. A reasonable police officer, in Officer Davis' position, would conclude that, under Tawdul and Wellman, instructing the plaintiff to come to him, and the plaintiff's refusal to comply constituted probable cause to arrest the plaintiff for RLE. Furthermore, a reasonable

officer would also have concluded that there was probable cause to arrest the plaintiff for Invasion of Privacy. Officer Davis was advised by dispatch that there was a protective order in place for Jayme Leonelli. Under the facts and circumstances present– the fire on the front lawn, the burning of a woman's clothing, the damage to the front door of the house which was consistent with the door having been kicked-in and the plaintiff's admission that he and his wife had a verbal altercation that evening– it appeared that the plaintiff violated the protective order.

Leonelli has failed to raise any issues of material fact with respect to the defendants' claim of qualified immunity.  Leonelli again asserts that he did not hear Officer Davis instruct him to come to him and talk to him.  However, under the probable cause standard, the knowledge of the arresting officer is what matters, and there is no evidence that Officer Davis did not reasonably believe that Leonelli heard his command.  As noted, under <u>Tawdul</u> and <u>Wellman</u>, a reasonable officer would have believed that a suspect's refusal to comply with an instruction to "come to the officer and talk to him" would serve as a sufficient basis for a resisting law enforcement charge.  A reasonable officer would not have believed that it was necessary to use the specific words "stop" or "freeze" prior to arresting a suspect for RLE.

Leonelli also argues that there were no exigent circumstances justifying Officer Davis' entry into his home to arrest him.  As the defendants argue, however, Leonelli ignores all of the undisputed and relevant facts.  Officer Davis was dispatched to a "domestic" call where clothing was burning on the front lawn of a home.  At the scene, Officer Davis observed a large fire on the front lawn, and was advised by a neighbor that there was another domestic or fight occurring at the residence.  As Officer Davis approached Leonelli, it was not clear what had happened or what was happening.  Officer Davis could not have known whether there was a victim or a body

in the home.  He did not know exactly what role Leonelli had played in the extremely strange and potentially dangerous situation that he observed. To make matters worse and further raise suspicions, Leonelli shook his head, turned and walked into the house after being instructed to come to Officer Davis.  Officer Davis then opened the door of the house and entered, after again directing Leonelli to come to him and observing Leonelli reaching for something in front of him. On these undisputed facts, a reasonable officer would only have reached one conclusion – exigent circumstances existed that made it impractical to first obtain a warrant before entering Leonelli's home.

Next, the defendants argue that their search of the Granada Residence was reasonable under the exigent circumstances exception to the search warrant requirement.  "Police generally need a warrant to enter a home, but 'warrantless searches will be allowed when police have a reasonable belief that exigent circumstances require immediate action and there is no time to secure a warrant.'" United States v. Jenkins, 329 F.3d 579, 581 (7th Cir. 2003) (quoting United States v. Lenoir, 318 F.3d 725, 730 (7th Cir. 2003)). Exigent circumstances exist when "circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2000) (quoting United States v. Arch, 7 F.3d 1300, 1304 (7th Cir. 1993)). "When determining whether exigent circumstances exist, the court must analyze the situation from the perspective of the officers at the scene. Accordingly, we ask not what the police *could* have done." United States v. Marshall, 157 F.3d 477, 482 (7th Cir. 1998).

Prior to searching the Granada Residence for victims/other occupants, the Defendant

Officers had a reasonable belief, based upon the facts and circumstances, that there might be someone inside who required immediate assistance. The Defendant Officers were dispatched to the residence to investigate a report of a domestic disturbance. They observed a large fire on the front lawn. A neighbor advised Officer Davis that there was another "domestic" at the Granada Residence. Before searching the Granada Residence, the Defendant Officers observed damage to the front door of the house which was consistent with the door having been kicked-in before the police had arrived. In addition, Sergeant McCann, Detective Waters and Officer Richardson were informed by one of the plaintiff's neighbors that she heard a woman screaming in the house prior to their arrival. Collectively, these facts would have created the belief in a reasonable officer that there were exigent circumstances that required entry to aid or protect possible victims within the Granada Residence.

Leonelli has not offered any evidence to contradict the facts submitted by the defendants establishing exigent circumstances for the warrantless search. It is clear that the Defendant Officers were dispatched to Leonelli's home following two 911 calls. The transcript of the 9111 calls, subimitted by Leonelli, shows that the two callers reported that Leonelli has set a fire on his front lawn. One caller, whose name appeared on the 911 screen, reported that there was a domestic dispute at Leonelli's home. The other caller agreed that there appeared to be an ongoing domestic dispute. Upon arriving at the home, the Defendant Officers observed the large fire raging on Leonelli's front lawn, underneath a weeping willow tree. The officers were informed of Leonelli's behavior and advised by a neighbor that a woman had screamed inside

the house.[8]  Written statements from four witnesses (which Leonelli submitted) indicated that

Leonelli had been <u>throwing clothes</u> on his front lawn and set them on fire.[9]  Finally, the

Defendant Officers observed damage to the front door of the home which was consistent with the

door having been forced open before they arrived.[10]   The defendants argue that all of these

uncontested facts demonstrate that there were exigent circumstances that made it impractical to

obtain a search warrant and required the Defendant Officers to search the home for a victim or

injured person.

Moreover, the Seventh Circuit has held that a 911 call of an assault, possibly in progress

by itself "can be enough to support warrantless searches under the exigent circumstances

exception particularly where . . . the caller identified himself."  <u>United States v. Jenkins</u>, 329

F.3d 579, 581 (7th Cir. 2003)(quoting <u>United States v. Richardson</u>, 208 F.3d 626, 629 (7th cir.

2000)).  In the present case, a 911 caller, identified as "Gordon", reported a domestic dispute

with a fire on the front lawn.  A subsequent 911 caller reported that the dispute was still ongoing.

Consequently, under <u>Jenkins</u>, it must be concluded that exigent circumstances were present.

Leonelli argues that the Defendant Officers should have known that there had not been a

domestic disturbance at the home because Mrs. Leonelli was not even present in the home.

---

[8]  Leonelli disputes that a woman was heard screaming.  However, Leonelli has not submitted any evidence contradicting that <u>someone reported</u> a woman screaming.  At the time of the search, the Defendant Officers had only Leonelli's seemingly self-serving statements that no one was in the house.  Clearly, the officers would have been derelict in their duties if they had relied on Leonelli's word given his behavior and the circumstances observed.

[9]  This is in direct contrast to Leonelli's testimony that he threw opaque garbage bags containing clothes on the front lawn.

[10]  Leonelli acknowledges that there was a crack in the door frame, which he characterizes as "a hairline crack".

Obviously, however, there was no way for the Defendant Officers to know whether Mrs. Leonelli was or was not in the home without going into the home or wasting time trying to locate her, while there may have been someone in need of assistance inside. Furthermore, Leonelli's argument assumes that Mrs. Leonelli was the only other person that could possibly have been in the home – clearly a flawed assumption.

Leonelli also claims that the Defendant Officers conducted a search of his home that included "going into cabinets, drawers, and the home computer." The Defendant Officers submitted affidavits stating that their search was limited to those areas of the home where a person or body could be found. They did not search cabinets, drawers or the home computer.

Leonelli has cited to his own affidavit in which he claims that the officers searched his cabinets, drawers and computer. He states the basis for his conclusion that Mrs. Leonelli told him the next morning that these things had been searched. The defendants have moved to strike these statements on the grounds, among others, that Leonelli admittedly does not have personal knowledge of the "facts" that he has included in this portion of his affidavit. This motion is discussed more fully later in this order.

In addition to his own affidavit, Leonelli has offered Mrs. Leonelli's deposition testimony, which indicates that when she returned home the next day, drawers were pulled out and cabinets were open. However, assuming this is true, there is no evidence that this was done by the Defendant Officers. Mrs. Leonelli testified in her deposition that when she returned home late that evening, "the front door was wide open." (M. Leonelli Dep. at 30). If the front door was open, anyone could have entered the home after the Defendant Officers left. Since Leonelli did not observe any of the Defendant Officers search anything in his home and the door was

wide open, there is no evidence that the search exceeded its proper scope.

The defendants further argue that they are entitled to qualified immunity on Leonelli's unreasonable search claim. Under both prongs of the qualified immunity analysis, the defendants claim they are entitled to qualified immunity. There were exigent circumstances requiring the search of the Granada Residence and thus the defendants did not violate Leonelli's constitutional rights. However, even assuming a constitutional violation had occurred, it would not have been clear to a reasonable officer that the search was unlawful in the situation that the defendants confronted.

Although there is a clearly established right to be free from a warrantless search of one's residence, as shown above, exigent circumstances obligated the Defendant Officers to search the Granada Residence for possible victims. Thus, it must be concluded that the defendants did not violate the plaintiff's Constitutional rights, and the defendants are entitled to qualified immunity.

Even if the exigent circumstances exception did not apply, a reasonable officer would have believed that the exception did apply. Thus, the defendants are also entitled to qualified immunity under the second prong of the analysis.

Exigent circumstances exist when "circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house, apartment, or hotel room required immediate assistance." United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2000) (quoting United States v. Arch, 7 F.3d 1300, 1304 (7th Cir. 1993)).

As noted above, the Defendant Officers were dispatched to the Granada Residence to investigate a report of a domestic disturbance. They observed a large fire on the front lawn. A

neighbor advised at least one of the officers that there was another "domestic" at the Granada Residence. Before searching the Granada Residence, each of the Defendant Officers observed damage to the front door of the house which was consistent with the door having been kicked-in before the police had arrived. Additionally, Sergeant McCann, Detective Waters and Officer Richardson were informed by one of the plaintiff's neighbors that she heard a woman screaming in the house prior to their arrival. Collectively, these facts would have created the belief in a reasonable officer that there were exigent circumstances that required entry to aid or protect possible victims within the Granada Residence. Therefore, the defendants are entitled to qualified immunity and summary judgment on the illegal search claim.

The defendants next argue that, pursuant to Indiana Code 34-13-3-3, the Indiana Tort Claims Act, they are entitled to immunity on Leonelli's state law trespass and malicious prosecution claims. Leonelli has conceded that his trespass claims fail.

The Indiana Tort Claims Act ("ITCA") renders police officers and their governmental employers immune from liability when acting in the course of their employment if a loss results from the "adoption and enforcement of or failure to adopt or enforce a law." Indiana Code § 34-13-3-3(8). In this case, because the Defendant Officers were enforcing the law, they are immune from liability.

The case of O'Bannon v. City of Anderson, 733 N.E.2d 1 (Ind. App. 2000), is instructive. In O'Bannon, Anderson police officers were chasing an armed felon. The felon retreated into O'Bannon's home. The Anderson police officers fired shots into O'Bannon's home, searched her home and seized her momentarily in the course of arresting the felon. O'Bannon sued the city of Anderson and the police officers, alleging negligent infliction of emotional distress, trespassing

and illegal search and seizure. The defendants moved for summary judgment, arguing that they were entitled to immunity under Indiana Code § 34-13-3-3. The trial court granted summary judgment. The Indiana Court of Appeals affirmed. The Court of Appeals held that the officers' acts were performed while the officers effected the arrest of a fleeing dangerous suspect. The Court held that the officers were enforcing the law, and thus, the defendants were entitled to immunity. As in O'Bannon, the defendants herein were enforcing the law when the plaintiff was arrested. Therefore, the defendants are immune from liability under the ITCA on the plaintiff's malicious prosecution claims.

Leonelli continues to argue that the ITCA does not provide immunity to officers for malicious prosecution claims. However, it is clear that the ITCA provides governmental employees with immunity when enforcing the law (except for false arrest/imprisonment claims) and when initiating judicial or administrative proceedings. I.C. 34-13-3-3(6), (8).

Leonelli also argues that the defendant City of Kendallville is liable for false arrest and malicious prosecution, under a theory of respondeat superior. Respondeat superior is a theory of vicarious liability whereby an employer can be held liable for the state law torts of an employee if committed in the scope of his employment. Branham v. Celadon Trucking Serv., Inc., 744 N.E.2d 514, 525 n. 2 (Ind. Ct. App. 2001). As a result, if the employee is not liable, the employer cannot be liable either. Id. As Officer Davis is not liable for the state law claims, the claims against the City also fail.

Leonelli has asserted a claim for punitive damages against the individually named officers. Even assuming his claims otherwise survived, punitive damages are not appropriate. Punitive damages may only be assessed "when the defendant's conduct is shown to be motivated

by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Merrit v. De Los Santos, 721 F.2d 598, 601 (7th Cir. 1983). In the present case, there is no evidence that the alleged conduct of the defendants was motivated by evil motive or intent, or that their alleged conduct involved reckless or callous indifference to Leonelli's federally protected rights. Although Leonelli contends that Officer Davis acted recklessly and callously indifferent to Leonelli's federally protected right to be free from unreasonable seizure, there is absolutely no evidence to support Leonelli's arguments. Accordingly the defendants' motion for summary judgment will be granted.

## Motions to Strike

Leonelli has filed a motion to strike portions of the affidavits of Davis, McCann, Richardson and Waters. With respect to the Davis Affidavit, Leonelli seeks to strike paragraphs 7, 18, and 19. In paragraph 7 of his affidavit, Officer Davis states that he was "advised by one of the individuals in the street that there was another domestic, or fight, occurring at the Granada address." Leonelli contends that this statement is inadmissible hearsay of an unidentified third party. The defendants, however, correctly argue that the statement is not hearsay because it is not being offered to prove the truth of the matter asserted. That is, Officer Davis did not make the assertion to prove that there was a domestic, or fight, occurring at the Granada Residence when he arrived. Rather, this information is provided to support the defendants' position that, under the circumstances, the defendants acted with probable cause. Probable cause exists when "an officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." Thompson v. Wagner, 319 F.3d 931, 934 (7th Cir. 2003). As the statement at issue shows facts and

circumstances that were within the knowledge of Officer Davis and the other defendants at the time of Leonelli's arrest and prior to the search, the statement is not hearsay.

Next, Leonelli claims that paragraph 18 of the Davis Affidavit is inadmissible. This paragraph contains the statements as to Officer Davis' personal belief at the time of Leonelli's arrest that Jayme Leonelli was Leonelli's current wife and that Officer Davis thought Jayme had been an individual that had left Leonelli's home after an argument. Leonelli argues that Officer Davis' subjective belief is irrelevant to whether there was probable cause to detain, arrest or charge Leonelli with a crime.

Courts evaluate probable cause based on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard. United States v. Parra, 402 F.3d 752, 763-64 (7th Cir. 2005). This court agrees with the defendants that Officer Davis' beliefs regarding the protective order and Jayme Leonelli may not be determinative, but they are relevant. The trier of fact must consider Officer Davis' actions based on the facts and circumstances within his knowledge at the time of the arrest. Using an objective standard, the trier of fact must determine whether Officer Davis' beliefs and his subsequent actions were reasonable. Officer Davis' beliefs at the time relevant to Leonelli's arrest have a tendency to make the existence of probable cause more likely than it would be without this evidence. Therefore, the testimony is relevant and admissible.

Leonelli objects to paragraph 19 of Officer Davis's affidavit. This paragraph contains statements as to Officer Davis' personal subjective belief and Leonelli argues that the statement is irrelevant. However, as set forth above, the facts and circumstances prior to and at the time of the arrest are relevant to the probable cause consideration. Further, the determination of whether

a reasonable person in the same situation would have reached the conclusions Officer Davis reached is relevant to the question of whether Officer Davis' actions were objectively reasonable.

Finally, Leonelli argues that paragraph nine of Sergeant McCann's affidavit, paragraph seven of Officer Richardson's affidavit, and paragraph seven of Detective Waters' affidavit should be struck because they contain statements that lack personal knowledge, contain conclusory statements, and inadmissible hearsay. Each of these paragraphs contain some variation of the statement, "I, and the other officers, were informed by witnesses that they had heard a woman screaming inside the home prior to our arrival." Clearly, as the defendants point out, McCann, Richardson, and Waters have personal knowledge as to what they were informed by witnesses at the scene. Further, to the extent that other officers were present when the statement was made, the affiants would have personal knowledge that the witnesses informed other officers that they heard a woman screaming inside. Thus, it is clear that the affiants have personal knowledge of the information contained in the subject paragraphs.

With respect to Leonelli's objection that the paragraphs contain conclusory statements, it is unclear how the statement is conclusory. A conclusory statement expresses "a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary, (8th ed. 2004). The statement at issue does not contain any factual inferences, but merely recite the underlying facts.

Leonelli also objects that the statement is hearsay. However, as it is clear that the statement was not made to prove the truth of the matter asserted but to explain the facts and circumstances as they appeared to the defendants around the time of Leonelli's arrest and the

search of his residence.  This is proper evidence in determining if probable cause existed for the arrest and search.  Accordingly, Leonelli's  motion to strike will be denied in its entirety.

The defendants have also filed a motion to strike.  First, the defendants argue that paragraphs 5, 13 and 14 of Leonelli's affidavit are inadmissible for the reason that they are inconsistent with Leonelli's deposition testimony, contain statements of fact that are based upon speculation and conjecture, not personal knowledge, contain statements that are irrelevant, and/or are inadmissible hearsay.

Specifically, the defendants argue that statements in paragraph 5 of Leonelli's affidavit are inconsistent with his deposition testimony.  The last sentence of paragraph 5 of Leonelli's affidavit reads, "Officer Davis had said nothing to me up to this point and had failed to either knock, ring the doorbell, or announce himself before entering my home."  The defendants point out that during his deposition Leonelli testified that its is "possible" that Officer Davis said something to him, before he went into the house.  In response, Leonelli states that his affidavit states "what he knew based on his own physical experience of hearing no commands from Davis prior to being placed under arrest..."   While Leonelli may have meant to say he did not hear any command from Davis, that is not how his affidavit is actually worded.   The affidavit states that Davis did not say anything to Leonelli, and as this statement is contradicted by the deposition testimony that it was possible that Davis spoke to Leonelli but Leonelli did not hear him, the statement will be stricken.

Next, the defendants argue that paragraph 13 of Leonelli's affidavit is not based on personal knowledge.   Leonelli states in his affidavit that "[w]hen the Defendants searched my home, they looked in cabinets and in drawers, and searched my computer."  However, the

27

evidence in this case shows that Leonelli was escorted from his home and placed in a squad car before being eventually transported to the Kendallville Police Department. During his deposition, Leonelli stated that while he was in the back of the squad car he did not see anyone enter his home. (Leonelli Dep. at 36). Thus, it is clear that Leonelli does not have personal knowledge that any of the Defendants entered his home or searched in cabinets, drawers, and his computer, and the statement will be stricken.

The fourth and fifth sentences of paragraph 13 state, in pertinent part, "I know this because when I got home the next morning my wife, Mary, was home and she told me about finding her dresser drawers had been gone through and that cabinets had been gone through. Mary said she had not gone through them . . . ." The defendants argue that these statements are inadmissible hearsay. Clearly, the defendants are correct.

The last sentence of paragraph 13 reads, ""[t]o the best of my knowledge from the time that I had arrived home the evening before, up to the time that Mary returned to the home, no one had been in the home other than myself, Officer Davis, and the other officers that searched my home, while I waited in the squad car in front of my house." The defendants contend that Leonelli does not (nor does he claim to have) personal knowledge of the events that occurred at the Granada Residence from the time he was arrested on May 3, 2006 until he returned to the residence the following day. Thus, the defendants argue that the statements are based purely on speculation or conjecture, and not on Leonelli's personal knowledge. Again, as Leonelli was not at the home during the relevent time frame, his statement about what occurred or did not occur at the home is speculation and will be stricken.

Next, the defendants request that paragraph 14 of Leonelli's affidavit be stricken in its

entirety.  The first sentence of paragraph 14 states in part, "[i]n addition to having the drawers and cabinets within my home searched through. . . .", which, as noted above, must be stricken as speculative.  The first sentence of paragraph 14 goes on to state,  "I learned that the Defendants had also searched my computer because it was on when I got home the next morning it was on although I had not had it on when I was removed from the home the night before."  Again, Leonelli cannot possibly have personal knowledge of what occurred at the Granada Residence from the time he was arrested until he returned the next day.  This court agrees with the defendants that Leonelli's statement that his computer had been searched is purely speculative and not personal knowledge.

In paragraph 14, Leonelli further states that "[a]gain, the only other psersons what [sic] would have had access to the computer before my arrival home the next morning would have been the Defendants."  As set forth above, Leonelli does not have personal knowledge of what occurred at his house while he was not there.  Accordingly the statement will be stricken.

Next, in paragraph 14, Leonelli claims that "[i]n addition, Mary said she had not gotten on the computer either."  As this statement is not made by Leonelli, it may not be used to prove the truth of the matter asserted, and will be stricken.

Paragraph 14 concludes with the statement, "I was concerned about my computer having been searched because I do some of my work on my home computer and it contains confidential information."  The defendants argue that this statement is irrelevant, as Leonelli's concern about the release of information contained on his personal computer does not have the tendency to make the existence of any fact that is of consequence to the determination of this action more or less probable than without this statement.  Again, the defendants are correct and the statement

will be stricken.

Next, the defendants seek to strike Exhibits 4 and 5 to Leonelli's response brief. Both of these exhibits are Orders of the Noble Superior Court that were entered in the criminal action that was initiated in connection with the events of May 3, 2006 that occurred at the Granada Residence. Exhibit 4 is an order of dismissal on the invasion of privacy charge, and Exhibit 5 is an order of "not guilty finding" as to the resisting law enforcement charge. The defendants argue that based on well settled law, these documents are irrelevant. Generally, evidence of acquittal in a criminal action is irrelevant and inadmissible in a civil case involving the same incident "since it constitutes a 'negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt.'" Estate of Moreland v. Dieter, 495 F.3d 747, 755 (7th Cir. 2005).

Leonelli contends that the exhibits are relevant because he has brought a malicious prosecution claim and must show that the charges imposed were at some point dismissed. Leonelli further claims that the dismissal of the criminal charges is relevant to the issue of damages he incurred due to having to defend against the charges.

As the defendants note, Leonelli does not use the exhibits to support his malicious prosecution claim, or to support his damages. Rather, the exhibits are cited in connection with Leonelli's claim that Officer Davis did not tell him to "stop". As the exhibits are irrelevant for that purpose, they will be stricken.

<u>Conclusion</u>

On the basis of the foregoing, the defendants' motion for summary judgment [DE 47] will be GRANTED. Further, the plaintiff's motion to strike [DE 57] is hereby DENIED and the

defendants' motion to strike [DE 67] is hereby GRANTED.

Entered: August 15, 2008.

s/ William C.  Lee
William C. Lee, Judge
United States District Court